UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTEVA PRODUCTS, LLC,

           Plaintiff,

v.

MAGNA CLOSURES, INC.,

           Defendant.

_____/

Case No. 2:25-cv-11468

Honorable Susan K. DeClercq
United States District Judge

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO
DISMISS (ECF No. 8) AND DENYING PLAINTIFF'S MOTION TO
PERMIT DISCOVERY (ECF No. 13)**

This case involves two auto-industry companies that shared a commercial

relationship for over a decade. That relationship, however, is now broken. The

parties disagree which contract governs their relationship and whether one of the

contract's forum-selection clause is applicable to this dispute and enforceable against

Plaintiff. But because Defendant has not demonstrated that the forum-selection

clause governs as a matter of law, the motion to dismiss will be denied.

**I. BACKGROUND**

Plaintiff Inteva Products, LLC ("Inteva") filed a complaint against Defendant

Magna Closures, Inc. ("Magna") for breach of contract, promissory estoppel, and

declaratory judgment. *See generally* ECF No. 1.

Inteva supplies Magna with "door window motors and related parts" which Magna incorporates into door modules it sells to car manufacturer Stellantis as part of Stellantis' "RU program." *Id.* at PageID.1; ECF No. 8 at PageID.54. This commercial relationship was governed by a contract evidenced by Purchase Order 7167 ("PO7167") dated June 17, 2022, which expired on December 31, 2024. *Id.* at PageID.4. But before the contract expired, Magna asked Inteva to continue supplying parts through December 31, 2028. *Id.* at PageID.4–5. In response to this request, Inteva proposed new terms in an email on May 2, 2024, requiring Magna to provide Inteva with longer lead time component authorization and sales forecasts.[1] *Id.* Inteva maintains that Magna accepted these terms because Magna "continued to place orders with Inteva following Inteva's May 2, 2024, offer." *Id.* at PageID.5. This is the "New Contract" that Inteva alleges governs their relationship today and is set to expire in December 2028. *See id.* at PageID.2.

But in January 2025, "Magna stopped providing releases that forecasted any deliveries beyond August 2025," despite frequent email and meeting inquiries to Magna. *Id.* at PageID.6-7. Inteva alleges that Magna's response was that there were

---

[1] Inteva attaches an email from May 2, 2024, that allegedly contains the terms of the new contract. ECF No. 1-1 at PageID.21. The term relevant to the breach of contract claims is: "5. Inteva requires Magna to provide long lead time component material authorization. Magna needs to provide Inteva with 26 weeks of material authorization for specialized long lead components; to include 5-pin connector, 2-pin connector, and electronic components." *Id.*

no forecasted releases due to "a computer error" or because of problems with its "scheduling system" but that it "would continue to order Parts from Inteva past August 2025" and "the Contract was not being terminated." *Id.* at PageID.7–9. So Inteva continued ordering materials and producing parts for Magna. *Id.* However, at a meeting on May 5, 2025, Inteva realized that Magna "intended to terminate the Contract and replace Inteva with a new supplier." *Id.* at PageID.9.

To prevent being left with "more than three million dollars' worth of obsolete raw material, work in process, and finished Parts," on May 19, 2025, Inteva sued Magna for (1) breach of contract and breach of its duty to operate in good faith and fair dealing; (2) promissory estoppel; and (3) declaratory judgment. *Id.* at PageID.11–18.

Inteva's claims for breach of contract and breach of good faith allege that Magna failed to provide sales forecasts and material authorizations, increased and decreased forecasts, misled Inteva about purchases beyond August 2025, and took unauthorized debits against Inteva in excess of $80,000. *Id.* at PageID.11–14. [2]

Inteva's promissory estoppel claim alleges that Inteva detrimentally relied on Magna's promises that it would purchase parts beyond August 2025, that it was not

---

[2] Although Inteva mentions a *potential* breach of contract and fair dealing "[i]f Magna stops purchasing Parts from Inteva in August 2025," ECF No. 1 at PageID.10, Magna has not challenged the plausibility of this allegation; rather, it seeks dismissal through enforcement of a forum-selection clause, *see generally* ECF No. 8.

replacing Inteva or terminating the contract, and that the overall RU program was not ending. *Id.* at PageID.14–15. Lastly, Inteva seeks a declaratory judgment regarding the parties' respective rights and obligations. *Id.* at PageID.16–18.

On June 12, 2025, Magna filed a motion to dismiss under Civil Rule 12(b)(6); Civil Rule 12(b)(3); and *forum non conveniens*. ECF No. 8.

Preliminary, while Magna does not dispute that Inteva supplies motors for incorporation by Magna into door modules for Stellantis' RU program, it disputes which contract governs that supply relationship *Id.* at PageID.54.

Magna argues that the contract that controls the parties' supply relationship since September 2015 ("First Contract") consists of: (1) PO7167 dated June 17, 2022; and (2) the Terms and Conditions Agreement ("T&Cs") that were "specifically negotiated and signed by Magna and Inteva in September of 2014." *Id.* at PageID.54. Magna thus contends that this dispute should be resolved in Ontario, Canada, pursuant to Paragraph 42(b) of the T&Cs. *Id.* at PageID.58.

Magna argues that Inteva's purported New Contract is an unlawful modification of the First Contract because: (1) the T&Cs stipulated that Inteva assumed of the risk of the RU program being cancelled or extended by the car manufacturer; (2) the T&Cs included a provision that required any modification to the contract to be "in writing and signed by [Magna's] authorized representative;" (3) the T&Cs prohibited price increases; (4) Inteva's email is simply a "proposal"

for new terms, as evidenced by the email's discussion of the "existing [Contract] terms and requests to update . . . PO7167," which Magna never accepted; (5) Magna purchases following the May 2024 email were made pursuant to the PO7167, as evidenced by Inteva's invoices; and (6) in 2022, a court in Ontario declared PO7167 "a valid and subsisting agreement between the parties." *Id.* at PageID.55–57. Accordingly, because the New Contract does not exist, the First Contract controls and its Ontario forum-selection clause must be enforced. *See id.* at PageID.54–57.

In the alternative, Magna seeks dismissal pursuant to the common law doctrine of *forum non conveniens*,[3] arguing that: (1) the forum-selection clause has controlling weight in the analysis; (2) Magna is located in Ontario, Canada, and the First Contract provides that "any dispute initiated by Inteva must be brought in Ontario;" (3) the T&Cs provide for the application of Ontario law; and (4) "both the private and public interest factors weigh heavily in favor of dismissal." *Id.* at PageID.65–70.

Inteva opposes the motion, arguing that the First Contract expired on December 31, 2024, and even if the First Contract's forum-selection clause applies,

---

[3] Magna nominally invoked Rule 12(b)(3) as a basis for dismissal, but it offered no argument or authority in support of that ground, *see generally* ECF No. 8, so this basis will not be addressed. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (holding that issues raised in a perfunctory manner without developed argumentation are deemed waived, and that it is not sufficient for a party to merely mention a possible argument in skeletal form and leave the court to develop it).

it does not bar jurisdiction in the Eastern District of Michigan. ECF No. 11 at PageID.151–57. Inteva also argues that *forum non conveniens* does not preclude this Court's jurisdiction because Magna's reliance on the forum-selection clause is misplaced as it allegedly allows Michigan to be a proper forum. *Id.* at PageID.157–60.

In Magna's reply, it contends that the First Contract did not expire in December 2024, that the only possible interpretation of the forum-selection clause points to the courts of Ontario, Canada, and that the forum-selection clause and the application of Ontario law warrant dismissal under the *forum non conveniens* doctrine. ECF No. 12.

On March 13, 2026, Inteva moved to permit discovery before the Civil Rule 26(f) scheduling conference, arguing that Magna has acted in bad faith by "refus[ing] to have substantive discussions with Inteva" and by improperly terminating the "supply relationship, leaving Inteva with excess inventory and multi-million dollar claims from its suppliers." ECF No. 13 at PageID.203. Moreover, Inteva claims that there would be no prejudice to Magna because "the discovery sought will be necessary regardless of the ultimate forum." *Id.*

## II. LEGAL STANDARD

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). In considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equip.*, 48 F.4th 656, 663 (6th Cir. 2022). The plaintiff need not provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do.").

Although the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the court need not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–79 (internal quotation marks and citation omitted). The complaint is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678; see also *16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503–04 (6th Cir. 2013) ("The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct."); *Rudd v. City of Norton Shores*, 977 F.3d 503, 511 (6th Cir. 2020). Courts must restrict their review typically to the "four corners" of the complaint and a limited set of other materials permitted in the appropriate circumstances. *See Blackwell v. Nocerini*, 123 F.4th 479, 486–87 (6th Cir. 2024) (noting that courts may take judicial notice of public records and

exhibits referred to in the complaint on which the plaintiff's claim depends). If the complaint is not facially plausible, then the court must grant the motion to dismiss. *See Twombly*, 550 U.S. at 570; *see also Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

### III. ANALYSIS

### A. Forum-Selection Clause Defense

Magna seeks dismissal of this action because it should be litigated in Ontario, Canada, pursuant to the parties' First Contract's forum-selection clause. Inteva argues that the First Contract expired, and even if it is still applicable, the forum-selection clause does not bar jurisdiction in the Eastern District of Michigan. For the reasons explained below, Magna's motion to dismiss will be denied because there is a disputed question of fact whether a new contract was formed that cannot be resolved on the pleadings.

"When a defendant relies on an affirmative defense (like a forum-selection clause) to dismiss a complaint under Rule 12(b)(6), the framework becomes more nuanced." *VCST Int'l B.V. v. BorgWarner Noblesville, LLC*, 142 F.4th 393, 399 (6th Cir. 2025). The plaintiff does not bear the burden of pleading against an affirmative defense, only "short and plain statement[s] of the claims." *See Jones v. Bock*, 549 U.S. 199, 211–15 (2007); *see also Est. of Barney v. PNC Bank, Nat'l Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013) (noting that motions to dismiss are generally not proper on

bases of affirmative defenses unless the plaintiff anticipated the defense and explicitly included it in the complaint). But a court may still grant a motion to dismiss based on an affirmative defense if the complaint's allegations—or any other documents properly before the court—show that the defense applies as a matter of law. *See Est. of Barney*, 714 F.3d at 926; *see also Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) (holding that "there is no reason not to grant a motion to dismiss where the undisputed facts conclusively establish an affirmative defense as a matter of law") (citation modified).

The interpretation of a contract is a question of law for courts to decide. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007). To decide whether a forum-selection clause defeats plaintiff's choice of venue, courts must consider (1) whether the clause applies to the dispute at hand, and (2) whether the clause is enforceable against the opposing party. *Id.* at 401 (citing *Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 322–23, 326 (6th Cir. 2024)). But "[w]hether a contract exists is a factual question." *Mich. Educ. Ass'n Family Retired Staff Ass'n v. Mich. Educ. Ass'n*, 856 Fed. Appx. 580, 583.

Here the parties dispute the formation of the New Contract, and therefore, which contract applies. The contract formation question must be addressed before a forum-selection analysis and is not appropriate at the motion to dismiss stage. *See BorgWarner*, 142 F.4th at 402-03 (reversing a dismissal where factual disputes about

-9-

which contract applies were not resolved). So, before a court can assess whether a forum-selection clause *applies* or is *enforceable*, it must first establish the operative contractual instrument. *See id.* Without it, any applicability and enforceability analysis will inevitably start with a foundational error that no amount of careful downstream analysis can correct.

As the Sixth Circuit recently instructed in a case with a nearly identical procedural posture, this Court must ask only whether Inteva has stated a "plausible" claim in Michigan rather than Ontario. *See BorgWarner*, 142 F.4th at 401 (quoting *Twombly*, 550 U.S. at 570). In that effort, this Court must also accept the complaint's factual allegations as true and consider only the outside-the-complaint evidence that the complaint refers to and depends on. *Id.* (citing *Blackwell*, 123 F.4th at 486–87; *Rudd*, 977 F.3d at 511). On that score, the parties here—much like the parties in *BorgWarner*—refer to several outside-the-complaint documents, including PO7167, the T&Cs, and Inteva's May 2024 email, and appear to agree that the Court may consider these documents at this stage. *See id.*

Here, Inteva has pleaded a plausible claim that the First Contract expired in December 2024, that Magna then requested a new quote, and that the parties agreed on new terms governing the supply relationship from January 2025 through December 2028. ECF No. 1 at PageID.4–5. Both the breach of contract and promissory estoppel claims concern acts that occurred after December 2024 and

involve Magna's alleged failure to comply with the New Contract's terms (*e.g.*, failure to provide forecasts and authorizations, increasing and decreasing forecasts, and misleading Inteva about purchases beyond August 2025). *See id.* at PageID.11–14.

In contrast, it is also plausible that the May 2024 email was just a proposal[4], that their supply relationship for the "RU program" is entirely governed by the T&Cs, and that the First Contract's forum-selection clause is applicable and enforceable here. *See* ECF No. 8 at PageID.54–61.[5] Therefore, drawing reasonable inferences in Inteva's favor, this Court is unable to determine whether the parties intended to govern their relationship beyond December 2024 by the PO7167 and the T&Cs, much less whether the forum-selection clause applies and is enforceable. *See Hobart-Mayfield*, 48 F.4th at 663.

---

[4] "Contract formation does not always . . . end with a signed, formal, written document with a heading that includes the words 'agreement' or 'contract.' Sometimes it ends with a document that, at first blush, might look 'preliminary' in nature, and perhaps not even like a contract at all. Documents that typically are not intended to reach the parties' ultimate contractual objective . . . [such as] proposals can, in fact, be legally operative contracts." 5 CORBIN ON CONTRACTS § 24.1.

[5] The logical structure of this dispute is therefore a disagreement about which contract controls. In other words, Inteva asserts a breach of contract X; Magna asks this Court to enforce a forum-selection clause from contract Y because X does not exist. Whether X or Y controls calls for a factual determination that cannot be resolved at this stage.

This decision is consistent with the Sixth Circuit's recent decision in *BorgWarner*. *See* 142 F.4th at 399–403. In *BorgWarner*, the Sixth Circuit reversed dismissal on forum-selection grounds because the parties' multiple conflicting contracts created a factual dispute about which agreement—and therefore which forum-selection clause—governed. *See Id.* The Sixth Circuit held that the defendant had not established that the forum-selection clause applied as a matter of law. *Id.* at 402 (citing *Est. of Barney*, 714 F.3d at 926).

The factual dispute here is more fundamental than the one in *BorgWarner*. There, the Sixth Circuit reversed and remanded the district court's dismissal where parties disputed *which* of several concededly existing contracts controlled. *See BorgWarner,* 142 F.4th at 399–403. Here, it would be incongruous to permit dismissal where the threshold question of contract formation itself remains unresolved. *See Mich. Educ. Ass'n*, 856 F. App'x at 583 ("It is generally a question of fact for the jury whether or not a contract . . . actually exists." (quoting 11 WILLISTON ON CONTRACTS § 30:3 (4th ed. 2012))). In simple words, Magna's motion rests on the premise that the New Contract does not exist, but that premise has yet to be proven. *BorgWarner* thus compels the conclusion that Magna's motion is

-12-

premature, and that the factual predicate underlying its forum-selection defense must be developed through discovery.[6]

In sum, because whether a new contract was formed is a factual question that cannot be resolved on a motion to dismiss, Magna has not established as a matter of law that the First Contract's forum-selection clause applies to this dispute. Magna's motion to dismiss therefore will be denied.

## B. *Forum Non Conveniens*

Magna's *forum non conveniens* request rests on the forum-selection clause in the T&Cs, contending that the clause mandates litigation in Ontario, that Ontario law applies, and that both private and public interest factors favor dismissal in favor of a Canadian forum. ECF No. 8 at PageID.65–70. Inteva responds that the First Contract—and its forum-selection clause—expired on December 31, 2024, and that even if the clause remains operative, it does not warrant dismissal because it allegedly permits Michigan as a proper forum. ECF No. 11 at PageID.151–60. Magna's alternative request for transfer on *forum non conveniens* grounds will also be denied because this Court has not yet determined—and indeed cannot

---

[6] Magna's reliance on *Delta Alcohol Distribs. v. Anheuser-Busch Int'l, Inc.*, 28 F. Supp. 3d 682, 688–90 (E.D. Mich. 2014), does not alter this conclusion. In *Delta*, the parties never disputed how many contracts existed or which one governed—the only question was whether that agreement's forum-selection clause was broad enough to reach adjacent tort claims. *Id.* at 688. There was no factual dispute about the basic nature of the parties' contractual relationship. *See id.*

-13-

determine—that the 2014 forum-selection clause is applicable and enforceable as to the claims asserted here.

"[T]he appropriate way to enforce a forum-selection clause pointing to a . . . foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 60 (2013). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id.* at 62; *see also Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009) ("A forum selection clause should be upheld absent a strong showing that it should be set aside."). However, application of the doctrine "presupposes a contractually valid forum-selection clause." *Atl. Marine*, 571 U.S. at 62 n. 5. Accordingly, before balancing the *forum non conveniens* factors, a court must first "determine whether a forum-selection clause is applicable to the claims at issue, mandatory, valid, and enforceable." *Lakeside Surfaces, Inc. v. Cambria Co.*, 16 F.4th 209, 215 (6th Cir. 2021).

Here, this Court cannot determine whether the alleged forum-selection clause is applicable, so it cannot entertain Magna's arguments that the case should be transferred to Ontario, Canada, for *forum non conveniens*.  To grant a transfer now would be to resolve that factual dispute in Magna's favor before discovery has even begun. The *forum non conveniens* doctrine does not permit a court to bypass the threshold validity inquiry in order to reach the balancing analysis. Because the

present record cannot establish whether the First Contract's clause satisfies the predicate that *Atlantic Marine* and *Lakeside Surfaces* require, the motion is premature. *See BorgWarner*, 142 F.4th at 403 (holding that the factual dispute that doomed the Rule 12(b)(6) motion equally foreclosed resolution of the *forum non conveniens* motion).

Therefore, Magna's *forum non conveniens* request will be denied. *See id.*

### C. Motion to Permit Discovery

Inteva's motion for expedited discovery, ECF No. 13, is denied as moot. Inteva sought early discovery on the ground that Magna's motion to dismiss remained pending, but because that motion is denied herein, this case will proceed in this Court and discovery will commence in due course following the Rule 26(f) scheduling conference.

### IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendant's motion to dismiss, ECF No. 8, is **DENIED.**

Further, it is **ORDERED** that Plaintiff's motion to permit discovery, ECF No. 13, is **DENIED AS MOOT**.

**This is not a final order and does not close the above-captioned case.**

*/s/ Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: March 26, 2026